IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAH COLOR TECHNOLOGIES, LLC, | ) |
| Plaintiff, | ) |
| | ) Case No. 17 C 4931 |
| v. | ) |
| QUAD/GRAPHICS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 30, 2017, Plaintiff RAH Color Technologies, Inc. ("RAH") filed this patent infringement lawsuit against Defendant Quad/Graphics, Inc. ("Quad"). Subsequently, Quad filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, a motion to transfer venue to the United States District Court for the Eastern District of Wisconsin – located in Milwaukee, Wisconsin – pursuant to 28 U.S.C. § 1404(a). For the following reasons, the Court denies Quad's Rule 12(b)(3) motion to dismiss, but, in its discretion, grants Quad's motion to transfer venue to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a). Last, the Court denies RAH's Motion for Leave to Amend the Complaint without prejudice to its renewal in the Eastern District of Wisconsin.

## BACKGROUND

RAH is a limited liability company organized under the laws of the Commonwealth of Virginia maintaining an office in Alexandria Virginia. RAH owns numerous United States patents generally related to the field of color management and Dr. Richard A. Holub, the named inventor, manages RAH and is RAH's sole member. Quad is a Wisconsin corporation with its

principal place of business in Sussex, Wisconsin, a northwest suburb of Milwaukee. RAH alleges that as part of its business, Quad uses printer hardware and software that utilize color measurement and management techniques that, alone or in combination, infringe various claims of the patents-in-suit.

## LEGAL STANDARDS

### I. Motion to Dismiss under Rule 12(b)(3)

"[W]hile the substance of a venue challenge in a patent case will turn on § 1400(b), subject matter that is controlled by Federal Circuit law, the Federal Rules – as opposed to a patent-unique statute – provide the procedural vehicle for such a challenge." *Boston Sci. Corp. v. Cook Grp. Inc.*, ___F.Supp.3d ___, No. CV 15-980-LPS-CJB, 2017 WL 3996110, at *4 (D. Del. Sept. 11, 2017). Therefore, the Court follows Seventh Circuit law as it pertains to the procedural requirements of Rule 12(b)(3). *Id.* ("venue motions are procedural – and therefore governed by the law of the regional circuit."). "Under Rule 12(b)(3), which allows for dismissal for improper venue, the district court assumes the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). In other words, "[w]hen ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 809-10 (7th Cir. 2011) (citation omitted). The plaintiff bears the burden of establishing proper venue in the context of a Rule 12(b)(3) motion, although the plaintiff's burden in defending a Rule 12(b)(3) motion is low because courts resolve factual conflicts in the plaintiff's favor. *See id.* at 810; *Johnson v.*

*Creighton Univ.,* 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015); *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015).

II.     **Transfer Venue under 28 U.S.C. § 1404(a)**

"In 1948, Congress enacted the federal change of venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l Inc.,* 626 F.3d 973, 977 (7th Cir. 2010). Specifically, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), the moving party bears the burden of establishing that (1) venue is proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also DeKeyser v. Thyssenkrupp Waupaca, Inc.,* 860 F.3d 918, 923 (7th Cir. 2017). ("28 U.S.C. § 1404(a) gives a district court discretion to transfer a civil action to any other district or division where it might have been brought if the transfer is 'for the convenience of parties and witnesses, [and] in the interest of justice.'").

**ANALYSIS**

I.      **Rule 12(b)(3) Motion to Dismiss for Improper Venue**

The patent venue statute states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has

3

committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In May 2017, the United States Supreme Court clarified that for purposes of the patent venue statute, a domestic corporation resides only in the state of its incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC,* 137 S. Ct. 1514, 1520 (2017); *see also In re Micron Tech., Inc.*, 875 F.3d 1091, 1094 (Fed. Cir. 2017). Here, it is undisputed that Defendant Quad resides in Wisconsin, and thus the Court turns to the second clause of § 1400(b) and relies upon Federal Circuit law governing § 1400(b). *See In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017).

As highlighted above, under the Federal Rules of Civil Procedure and Seventh Circuit law, in the context of a Rule 12(b)(3) motion, the Court assumes the truth of the allegations in RAH's Complaint unless these allegations are contradicted by Quad's affidavits. *See Deb*, 832 F.3d at 809. In its Complaint, RAH alleges that Quad, "has committed acts of patent infringement within the State of Illinois and, more particularly, within the Northern District of Illinois." (R. 1, Compl. ¶ 8.) In the present motion, Quad asserts that it did not commit any acts of infringement in the Northern District of Illinois presenting affidavits in support of its venue arguments. In doing so, Quad specifically explains that the asserted patent infringement claims depend on the use of third-party software, including Electronics For Imaging ("EFI"), Kodak, and Heidelberg.[1] In the declaration of Tim Sands, Quad's Vice President of Press Operations, Sands avers that Quad's Northern District of Illinois facilities include a creative agency in Chicago and a logistics services office in Bolingbrook, Illinois, a suburb of Chicago. (R. 26, Sands Decl. ¶ 10.) Sands further elucidates that the Heidelberg software at issue in this lawsuit

---

[1] RAH maintains that it has reached agreements with Sony and Samsung about the licensing of its patents, therefore, RAH's allegations concerning the infringement of claim 26 of the '546 patent are not relevant to the present Rule 12(b)(3) motion or motion to transfer venue under § 1404(a).

4

includes Heidelberg Prinect Image Control, Heidelberg Prinect Press Center, and Heidelberg Prinect Color Toolbox software. (*Id.* ¶ 11.) He asserts that no Quad facilities in Illinois use the Heidelberg software, but that a Quad facility in Burlington, Wisconsin uses portions of the Heidelberg software. (*Id.* ¶¶ 12, 13.) Quad also presents the affidavit of George Forge, Quad's Executive Director of Digital Print, who avers that Quad's Illinois facilities do not use the EFI Fiery print server software, which includes EFI Command Workstation and EFI Color Profiler Suite. (R. 25, Forge Decl. ¶¶ 4, 5.) Forge maintains that to the best of his knowledge, and after reviewing Quad's business records, at least one Quad facility, located in New Berlin, Wisconsin, uses portions of the EFI software. (*Id.* ¶ 6.) Garrett Collins, a Technology Manager for Quad, avers that no Quad facilities in Illinois use the Kodak software at issue, which includes Kodak ColorFlow, Kodak InSite Prepress Portal, and Kodak Preps Imposition. (R. 23, Collins Decl. ¶¶ 4, 5.) Collins further states that to the best of his knowledge and based on his review of Quad's business records, at least one Quad facility in Burlington, Wisconsin uses portions of the Kodak software. (*Id.* ¶ 6.)

In response to these averments, RAH maintains that Quad has committed acts of infringement in the Northern District of Illinois in relation to the EFI Fiery print server software. In particular, RAH points to Quad's response to an interrogatory that its Chicago office leases a Xerox C60 press, which runs EFI Fiery print server, EFI's Command Workstation, and EFI's Color Profiler Suite software. (R. 58, Ex. 2, Quad Interrog. Resp., at No. 3.) RAH further contends that based on Quad's printer service contracts, the Chicago office has leased as many as four different Xerox digital production presses and related software, including systems that use EFI software. Moreover, Quad's Rule 30(b)(6) deponent, David Bontumasi, testified that Quad's Chicago office has Xerox C60 and C75 presses, which use EFI software. (R. 58, Ex. 1,

5

Bontumasi Dep., at 34.) Because the Court must resolve factual conflicts in RAH's favor at this procedural posture, *see Johnson,* 114 F.Supp.3d at 696, RAH has met its burden of establishing that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1400(b) due to Quad's alleged acts of infringement taking place in Chicago as it relates to the EFI software.[2] The Court therefore denies Quad's Rule 12(b)(3) motion to dismiss.

## II. Transfer Venue under 28 U.S.C. § 1404(a)

Although venue is proper in the Northern District of Illinois, venue may be proper in more than one court. *See Armstrong v. LaSalle Bank Nat'l Ass'n,* 552 F.3d 613, 617 (7th Cir. 2009). Here, the parties do not dispute that venue is also proper in Eastern District of Wisconsin where Quad resides, *see* 28 U.S.C. § 1400(b), nor do the parties dispute that the Eastern District of Wisconsin has jurisdiction over this matter. Accordingly, the Court turns to whether transfer to the Eastern District of Wisconsin will serve the convenience of the parties and witnesses and promote the interests of justice. *See Coffey*, 796 F.2d at 219-20. In making this determination, the Court looks to both private and public interests. *Research Automation,* 626 F.3d at 978; *Nalco Co. v. Envtl. Mgmt., Inc.,* 694 F.Supp.2d 994, 998 (N.D. Ill. 2010). Private interests include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience to the witnesses and parties. *See Research Automation,* 626 F.3d at 978; *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 955 (N.D. Ill. 2017). Factors traditionally considered in the public interest analysis, also known as the "interest of justice" factors, include the congestions of the respective court dockets, prospects for a speedy trial, and the courts' familiarity with the applicable law. *See Research Automation,* 626

---

[2] In its motion for leave to amend, RAH points to alleged acts of infringement taking place in Chicago in relation to its new allegations about Adobe Photoshop and Adobe InDesign. (R. 58, Ex. 1, Bontumasi Dep., at 17-18.) Because the Court concludes RAH has established that venue is proper in the Northern District of Illinois based on the EFI software, the Court need not address these new infringement allegations in the present Rule 12(b)(3) motion.

F.3d at 978. District courts may make any necessary factual findings when determining venue issues. *See In re LimitNone, LLC,* 551 F.3d 572, 577 (7th Cir. 2008).

### A. Private Interest Factors

#### 1. Plaintiff's Choice of Forum

In general, courts give considerable deference to a plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663-64 (7th Cir. 2003). That deference is lessened, however, when "the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC v. Boston Sci. Corp.,* 846 F.Supp.2d 980, 992 (N.D. Ill. 2012); *see also Nicks,* 260 F. Supp. 3d at 955.

It is undisputed that RAH is organized under the laws of Virginia and has an office in Alexandria, Virginia, which is in the Eastern District of Virginia – not the Northern District of Illinois. Turning to RAH's other connections with the Northern District of Illinois, RAH's counsel is located in Chicago. It is well-established, however, that counsel's convenience is not an appropriate consideration in evaluating the transfer of venue. *See Body Sci.*, 846 F.Supp.2d at 993; *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.,* No. 11-CV-7992, 2013 WL 951115, at *2 (N.D. Ill. Mar. 11, 2013). Because the Northern District of Illinois is not RAH's home forum, its choice of forum carries less weight. *See Delta Air Lines, Inc. v. Perfekt Mktg., Inc.*, 861 F. Supp. 2d 919, 920 (N.D. Ill. 2012).

#### 2. Situs of Material Events

"In patent infringement cases, 'the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the

plaintiff.'" *Body Sci.*, 846 F. Supp. 2d at 992 (citation omitted); *see also SwingAway Sports Prod., Inc. v. Escalade, Inc.,* No. 11 C 7949, 2012 WL 1431277, at *3 (N.D. Ill. Apr. 23, 2012) (same). In support of this factor, Quad sets forth Tim Sands' declaration, as discussed above. In his declaration, Sands avers that Quad, which has its corporate offices and headquarters in Sussex, Wisconsin, has approximately 19,000 employees worldwide, including approximately 7,400 employees in the State of Wisconsin. (Sands' Decl. ¶¶ 4, 5.) Quad, however, has only 761 employees in Illinois, many of whom are not located in the Northern District of Illinois. (*Id.* ¶¶ 9, 10.) Sands further represents that Quad has a significant number of production facilities located in the Eastern District of Wisconsin, including: (1) a production plant specializing in catalogs, directories, and books in Burlington, Wisconsin; (2) a packing solutions plant in Franklin, Wisconsin; (3) a production plant that designs and manufactures in-store marketing solutions in New Berlin, Wisconsin; (4) a plant that produces weekly news magazines and retail advertising inserts in Hartford, Wisconsin; and (5) a production plant that focuses on special interest publications in West Allis, Wisconsin. (*Id.* ¶ 5.) Furthermore, Sands asserts that Quad has a consolidation center in Menomonee Falls, Wisconsin and that it provides ink manufacturing out of facilities in Hartford and Lomira, Wisconsin. (*Id.* ¶¶ 7, 8.) Moreover, Quad has sales offices in Sussex and Burlington, Wisconsin. (*Id.* ¶ 6.) Also, as discussed above, Quad's other declarants aver that Quad uses portions of the accused software at facilities in Burlington and New Berlin, Wisconsin. (Forge Decl. ¶ 6; Collins Decl. ¶ 6.)

On the other hand, based on Quad's 2016 Annual Report, RAH argues that Quad's business operations are nationwide in scope and that it has 162 facilities in 17 countries. (R. 58-6, 2016 Annual Report). RAH also points out that Quad's creative activities take place in Illinois, Wisconsin, Minnesota, and New York. (Bontumasi Dep., at 37.) Furthermore, RAH

highlights Quad's response to its interrogatories identifying the various locations that may use the relevant software, which include Wisconsin, Illinois, Massachusetts, Pennsylvania, Kentucky, Texas, and South Carolina. (Quad Interrog. Resp., at Nos. 3, 5.)

Although RAH draws attention to certain aspects of Quad's nationwide business activities, these activities are not necessarily "material" for purposes of the present § 1404(a) motion, especially because patent courts also look to the alleged infringer's principle place of business in making this determination. *See*, *e.g., SwingAway Sports Prod.,* 2012 WL 1431277, at *3; *Pinpoint, Inc. v. Groupon, Inc.,* No. 11 C 5597, 2011 WL 6097738, at *2 (N.D. Ill. Dec. 5, 2011); *ORD Structure Innovations, LLC v. Oracle Corp.*, No. 11 C 3307, 2011 WL 4435667, at *2 (N.D. Ill. Sept. 22, 2011). As such, the situs of material events favors transfer, especially because Quad has presented undisputed evidence that it uses portions of the accused software in the Eastern District of Wisconsin.

### 3. Access to Sources of Proof

Given the technological advancements in document production, courts often consider the location of documentary evidence as a neutral factor in the context of a § 1404(a) motion. *See Nicks*, 260 F.Supp.3d at 957. That being said, "patent infringement suits usually focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiff." *Ellis Corp. v. Jensen USA, Inc.*, No. 02 C 7380, 2003 WL 22111100, at *3 (N.D. Ill. Sept. 9, 2003); *see also Body Sci.,* 846 F. Supp. 2d at 992. The Court notes that RAH has not addressed this issue. Nonetheless, as stated, courts in this district look to the location of the defendants' activities and physical documents when addressing this issue in patent cases. *See Craik v. Boeing Co.,* 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013). Hence, this factor weighs in favor

9

of transfer to the Eastern District of Wisconsin where Quad maintains its corporate headquarters and a significant portion of its relevant employees and operations are located.

### 4. Convenience to the Witnesses and Parties

"When evaluating the convenience of the witnesses and the parties, 'the court may consider the following factors: the number of potential witnesses located in the transferor and transferee districts; the expense of transportation and the length of time the witnesses will be absent from their jobs; the nature, quality, and indispensability of the witnesses testimony; and whether the witnesses can be compelled to testify.'" *Lewis v. Grote Indus., Inc.,* 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) (citation omitted). Courts "generally assign little weight to the location of employee-witnesses because they are usually within the control of the parties and are likely to appear voluntarily in either forum." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 988 (S.D. Ind. 2016). Therefore, the "convenience of non-party witnesses should be given more consideration than party witnesses (and their employees) under this factor, since party witnesses normally must appear voluntarily as part of their employment." *Rosen v. Spirit Airlines, Inc.,* 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015).

In support of its argument that the Eastern District of Wisconsin is not convenient for its witnesses, RAH presents the declaration of Dr. Richard Holub, who is the sole member of RAH. (R. 58-8, Ex. 8, Holub Decl. ¶ 1.) Dr. Holub, who is 70-years-old, avers that he is the named inventor of all the patents asserted in this case. (*Id.* ¶¶ 3, 4.) He maintains that Chicago is significantly more convenient for him than Milwaukee because he has worked with his Chicago law firm, Global IP Law Group, concerning RAH's patent portfolio for nine years. (*Id.* ¶¶ 5, 6.) Dr. Holub further explains that it is more expensive for him to fly to Milwaukee than to Chicago and that it is easier to fly to Chicago. (*Id.* ¶¶ 9-11.) Dr. Holub, however, is only one witness,

10

and as the sole member of RAH, his convenience is less important than the burden on non-party witnesses. *See Lewis,* 841 F. Supp. 2d at 1054; *see also Bd. of Trs., Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden.").

On the other hand, Quad argues that the Northern District of Illinois is not a convenient forum because the majority of its witnesses and evidence, including relevant managerial decision-makers and its accounting department, are located in the Eastern District of Wisconsin. As mentioned, the convenience of Quad's employee-witnesses is less important to the Court's § 1404(a) transfer analysis. Rather, courts are concerned with potential third-party witnesses who reside outside of the transferor or transferee district. In this matter, three non-parties are relevant to this lawsuit, including, Kodak (headquartered in Rochester, New York), Heidelberg (United States operations in Kennesaw, Georgia), and EFI (headquartered in Fremont, California). As such, the witness convenience factor is neutral, but the parties' convenience factor leans toward the Eastern District of Wisconsin because Quad's principle place of business is there.

**B.     Public Interest Factors**[3]

Section 1404(a) also requires the Court to consider whether transfer is in the "interest of justice." Factors considered in the "interest of justice," also known as public interest factors, include the congestions of the respective court dockets, prospects of a speedy trial, and the courts' familiarity with the applicable law. *See Research Automation,* 626 F.3d at 978; *Craik,* 37

---

[3] RAH's argument that courts in this district decline to transfer cases to Milwaukee because it is only 90 miles from Chicago is not supported by the district court cases it cites. Moreover, when courts exercise discretion, such as in motions to transfer venue, judges may reach different results based on the same circumstances. *See Elliot v. Mission Tr. Servs., LLC*, 104 F. Supp. 3d 931, 939 (N.D. Ill. 2015) ("on the same record, courts can arrive at different results, and both can still be appropriate exercises of discretion").

11

F.Supp.3d at 962-63.  Speed to resolution "is indicative of judicial economy, which may be measured by the median length of time from filing to disposition on the merits or the median time from filing to trial."  *Craik*, 37 F. Supp. 3d at 963.  In the most recent federal court management statistics dated September 2017, the Eastern District of Wisconsin has a slightly less congested court docket.[4]  To clarify, the median time from filing a civil case to disposition in the Northern District of Illinois is 8.5 months and in the Eastern District of Wisconsin is 6.4 months.  The median time from filing to trial in the Northern District of Illinois is 36.8 months and in the Eastern District of Wisconsin is 33.7 months.  Also, the number of cases per judge in the Eastern District of Wisconsin is lower than the number of cases per judge in the Northern District of Illinois.  Based on these statistics, this public interest factor weighs in favor of transferring this action to the Eastern District of Wisconsin.

Because both venues are federal district courts applying the same federal law, arguing that one district court is more familiar with the law than another is "inconsistent with the generalist nature of the United States district courts."  *Lewis,* 841 F. Supp. 2d at 1055; *see also Body Sci.*, 846 F. Supp. 2d at 998 ("Because patent infringement is a question of federal law, both this Court and any transferee court are 'equally well-equipped to accommodate patent infringement cases.'") (citation omitted).  This factor is therefore neutral.  Nevertheless, RAH argues that the Court should consider the other cases it has filed in the Northern District of Illinois in relation to the public interest factor of trying related cases together.  *See Lewis,* 841 F. Supp. 2d at 1055 ("Factors to consider include 'such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case.'") (citation omitted).  RAH has one other case pending before this Court, *RAH Color Tech.*

---

[4] *See* http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2017

*v. Xerox Corp.*, 17 C 6813, in which the parties are in settlement discussions. (17 C 6813, R. 17, 1/03/18, Unopposed Motion for Third Extension of Time.) Similarly, in another pending lawsuit in this district, *RAH Color Tech. v. Samsung Elec. Co.*, 17 C 5430, RAH and Samsung have reached an agreement-in-principle to settle. (17 C 5430, R. 15, Unopposed Motion to Stay Proceedings as a Result of Agreement-in-Principle). Otherwise, RAH has no other pending lawsuits in this district,[5] therefore, RAH's argument that this case should remain in the Northern District of Illinois so that the Court can try its lawsuits together is unavailing.

After careful consideration and weighing the public and private factors discussed above, Quad has met its burden in establishing that the Eastern District of Wisconsin is clearly more convenient than the Northern District of Illinois, especially in light of the situs of material facts, access to sources of proof, and judicial economy.

On a final note, the Court will not consider Quad's Rule 12(b)(6) arguments made in the present motion because RAH has subsequently filed a Motion for Leave to Amend the Complaint. Furthermore, the Court denies RAH's Motion for Leave to Amend without prejudice to its renewal in the Eastern District of Wisconsin. *See Body Sci.*, 846 F.Supp.2d at 999.

---

[5] *See, e.g., RAH Color Tech. v. R.R. Donnelly & Sons* (17 C 0894, R. 23, 6/05/17 Order Granting Stip. to Dismiss); *RAH Color Tech. v. Agfa Gevaert* (17 C 2145, R. 40, 9/06/17 Order Granting Stip. to Dismiss); *RAH Color Tech. v. Fujifilm Holdings* (17 C 2924, R. 17, 9/19/17 Order Grant Stip. Dismiss).

**CONCLUSION**

For these reasons, the Court denies Defendants' Rule 12(b)(3) motion to dismiss. Further, the Court, in its discretion, grants Defendants' Motion to Transfer Venue to the Eastern District of Wisconsin. *See* 28 U.S.C. § 1404(a). The Court denies Plaintiff's Motion for Leave to Amend the Complaint without prejudice to its renewal in the Eastern District of Wisconsin.

**Dated:** January 16, 2018

**ENTERED**

_____
**AMY J. ST. EVE
United States District Judge**